UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAMERA K. BRANDENBURG,    ) | |
|            ) | |
|    Plaintiff,     ) | |
|            ) | |
|    v.      ) | CAUSE NO. 1:10-CV-00283 |
|            ) | |
| MICHAEL J. ASTRUE,     ) | |
| Commissioner of Social Security,  ) | |
|            ) | |
|    Defendant.     ) | |

## OPINION AND ORDER

Plaintiff Tamera Brandenburg appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Brandenburg was last insured for DIB on March 31, 2009. (Tr. 169); *see Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB benefits). Brandenburg applied for DIB and SSI on August 11, 2008, alleging that she became disabled five years earlier, on February 1, 2003. (Tr. 157-68.) The Commissioner denied her application initially and upon

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

reconsideration, and Brandenburg requested an administrative hearing. (Tr. 63-70, 77-90, 94-111.)  Administrative Law Judge ("ALJ") Yvonne Stam conducted a hearing on November 4, 2009, at which Brandenburg, who was represented by counsel, and a vocational expert ("VE") testified. (Tr. 35-56.)

On January 8, 2010, the ALJ rendered an unfavorable decision to Brandenburg, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 17-28.)  The Appeals Council denied Brandenburg's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-11.)

Brandenburg filed a complaint with this Court on December 18, 2009, seeking relief from the Commissioner's final decision. (Docket # 1.)  She raises just one argument in her appeal—that the ALJ improperly discounted the credibility of her testimony of debilitating fatigue. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 9-12.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Brandenburg was forty-five years old; had a high school education; and possessed work experience as a customer service representative, machine operator, and receptionist. (Tr. 165, 185-86, 252, 398.)  Brandenburg alleges that she became disabled as of February 1, 2003, due to stage III breast cancer, modified radical mastectomy; depression; and chronic obstructive pulmonary disease ("COPD"). (Opening Br. 2.)

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 653-page administrative record necessary to the decision.

*B.  Brandenburg's Testimony at the Hearing*

At the hearing, Brandenburg testified that she spends most of her day resting due to severe fatigue. (Tr. 44-45.)  She stated that she can only complete part of a task such as dressing or doing dishes before she needs to rest. (Tr. 41.)  She depends upon her sister to perform certain tasks for her, such as doing laundry or shaving her legs. (Tr. 41.)  She spends her free time doing jigsaw and book puzzles. (Tr. 41.)

Brandenburg further testified that she can stand for ten minutes, sit from thirty minutes to one hour, walk one block, and lift up to ten pounds. (Tr. 42-43.)  She stated that she has felt extreme fatigue for years and tightness and pain in her shoulders, neck, and legs. (Tr. 43, 49.)  She also complained of "bone pain," headaches, muscle aches, swelling and pain in her stomach, intermittent numbness in her arm, shortness of breath, and that her ankles and knees "giv[e] out" for no reason. (Tr. 47-48, 50, 52.)  In addition, Brandenburg reported that she has problems concentrating on tasks. (Tr. 50.)  She takes a variety of medications for her conditions, including using an inhaler three to four times a day. (Tr. 52.)

*C.  Summary of the Relevant Medical Evidence*[3]

In August 2006, Brandenburg became a patient of Dr. Winifred Oniah at Indiana Health Centers, Inc. (Tr. 286.)  In January 2007, Brandenburg visited Dr. Oniah complaining of a sore throat, painful ears, and fatigue. (Tr. 285.)  She returned in February 2007 due to a sinus infection and an abnormal mammogram, and she was started on Paxil for an anxiety disorder. (Tr. 284.)  Brandenburg returned in April 2007 for follow-up, sinus issues, and prescription

---

[3] Although Brandenburg alleges that she was disabled as of February 2003, the medical evidence presented in her opening brief begins in 2006. (Opening Br. 2-8.)

3

refills, and Dr. Oniah increased her Paxil. (Tr. 283.)  In May and June 2007, she complained of fatigue. (Tr. 282.)  In August, Dr. Oniah decided to taper her off of Paxil. (Tr. 280.)

In July 2008, more than five years after her alleged onset date, Brandenburg was diagnosed with stage III breast cancer and underwent a right modified radical mastectomy. (Tr. 441.)  Four of twelve resected lymph nodes contained the metastatic carcinoma. (Tr. 441.)  After surgery, she began a course of adjuvant right chest wall and regional lymphatic radiotherapy. (Tr. 536.)

In August 2008, Dr. Oniah saw Brandenburg for asthma/COPD, breast cancer, and chronic depression, which had not been improving. (Tr. 592.)  She saw her again in September and December 2008 for her cancer and chronic anxiety. (Tr. 426-27.)

On October 16, 2008, Dr. Mangala Hasanadka, a state agency physician, reviewed Brandenburg's record and determined that although breast cancer is a severe impairment, the severity of her condition was not expected to last twelve months. (Tr. 395.)

On October 24, 2008, Brandenburg was evaluated by Ceola Berry, Ph.D. (Tr. 398-401.) Brandenburg was alert and cooperative. (Tr. 399.)  Her mood was mildly dysthymic with stable affective expression, she maintained eye contract without suggestion of anxiety, and she stayed focused for one hour. (Tr. 399.)  A mental status examination did not reveal any significant problems with concentration, memory, mental calculations, abstracting ability, or general knowledge. (Tr. 400.)  Judgment, however, presented as constrained, considering that she smoked a pack of cigarettes a day despite her COPD and her children had been removed from her care due to a charge of child neglect. (Tr. 400.)  Dr. Berry diagnosed her with depression NOS; nicotine dependency with physiological dependency; and noncompliance with treatment,

4

assigning her a General Assessment of Functioning ("GAF") score of 70.[4]

On November 19, 2008, William Shipley, Ph.D., a state agency psychologist, reviewed Brandenburg's record and concluded that she had a mild restriction in activities of daily living and mild difficulties in social functioning, but no difficulties in maintaining concentration, persistence, or pace. (Tr. 402-15.)  His opinion was later affirmed by a second state agency psychologist. (Tr. 474.)

In January 2009, Dr. Oniah reported that Brandenburg's anxiety disorder was more stable. (Tr. 425.)  She completed her chest wall radiotherapy for her breast cancer on March 13, 2009, and the next month, Brandenburg told Dr. Fred Francis of Indiana Radiotherapy, P.C., that she was "doing well" except for some continued generalized fatigue. (Tr. 529.)  He agreed that overall she was "doing well," noting that she displayed no evidence of active disease. (Tr. 530.)  That same month, Brandenburg complained to Dr. Oniah of continued anxiety. (Tr. 526.)

In March 2009, Brandenburg was referred to Family Service Society following allegations of alcohol and child abuse. (Tr. 583.)  Her affect was strained, and she was tearful at times, appearing anxious and depressed; she denied any suicidal ideation. (Tr. 583.)  Her memory was intact, and her thinking was sequential, logical, and goal-directed. (Tr. 583.)  She exhibited fair concentration, and there was no indication of any psychotic process; however, she displayed significant denial and minimization of her problems. (Tr. 583.)  Standardized testing indicated that she has at least average intellectual functioning. (Tr. 583.)  She was diagnosed with adjustment disorder, NOS; possible underlying personality disorder; and past history of

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).  A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id.*

alcohol abuse. (Tr. 583.)  She was assigned a current GAF of 60, with a GAF range for the past year of 51 to 60.[5] (Tr. 583.)

On May 6, 2009, Dr. J.V. Corcoran, a state agency physician, reviewed Brandenburg's record, concluding that she could lift ten pounds frequently and twenty pounds occasionally; stand or walk about six hours in an eight-hour workday; sit about six hours in an eight hour workday; but must avoid concentrated exposure to fumes, odors, dust, gasses, and poor ventilation. (Tr. 537-44.)  He placed no restrictions on her ability to push, pull, climb, balance, stoop, kneel, crouch, or crawl. (Tr. 539.)

In June 2009, Brandenburg returned to Family Service Society and was administered the MMPI-2. (Tr. 582.)  The testing suggested that she was very depressed and worried, and that she probably felt overwhelmed, unable to cope with stress, exhausted, very irritable, and angry. (Tr. 582.)  It further indicated that she may have concentration problems, difficulty with authority, issues with impulse control, poor insight, poor motivation for change, and ongoing problems with alcohol or substance abuse. (Tr. 582.)  She was assigned a diagnosis of dysthymic disorder and personality disorder, NOS, with hysterical, dependent, and cyclothymic features. (Tr. 582.)  Her prognosis was guarded due to her poor motivation, lack of insight, and her resistance to accept personal responsibility for her problems. (Tr. 582.)

In August 2009, Brandenburg reported anxiety and sleep problems to Dr. Oniah. (Tr. 585.)  In September, Brandenburg returned to Dr. Francis, who reported that she continued to do "very well" and was "essentially asymptomatic." (Tr. 579.)  She did, however, report some

---

[5] A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *See* AMERICAN PSYCHIATRIC ASSOCIATION, *supra* n.4 at 32.

generalized fatigue. (Tr. 579.)  He stated that she only needed to return to the Radiation Oncology Clinic "as needed." (Tr. 580.)

On September 8, 2009, Brandenburg went to the emergency room with complaints of chest pain and anxiety. (Tr. 629.)  She was noted to have psychotic behavior and dramatic movement of her extremities. (Tr. 629.)  She was diagnosed with anxiety, alcohol intoxication, history of breast cancer, and chest pain. (Tr. 629.)

Brandenburg saw Dr. Oniah again in November 2009 for several problems, including anxiety, fatigue, and headaches. (Tr. 640.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212

(7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer

---

[6] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### *B. The ALJ's Decision*

On January 8, 2010, the ALJ rendered her opinion. (Tr. 17-28.) She found at step one of the five-step analysis that Brandenburg had not engaged in substantial gainful activity since her alleged onset date and, at step two, that she had the following severe impairments: anxiety, COPD, and a history of breast cancer. (Tr. 15, 20.)

At step three, the ALJ determined that Brandenburg's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 20.) Before proceeding to step four, the ALJ determined that Brandenburg's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC:

> [T]he claimant has the physical residual functional capacity to perform sedentary work . . . in that she can lift and carry ten pounds and sit for about six hours and stand and walk in combination for about six hours for a total of eight hours per eight hour workday. With respect to her work environment the claimant must avoid concentrated exposure to pulmonary irritants. She retains the mental residual functional capacity to perform unskilled work tasks that do not require her to interact with the general public, work at fast pace, meet strict quotas or maintain attention for longer than a short period that would allow her to complete a specific task. Her use of judgment is limited to concrete variables.

(Tr. 21.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Brandenburg was unable to perform any of her past relevant work. (Tr. 26.) The ALJ then concluded at step five that Brandenburg could perform a significant number of jobs within the economy, including addresser, surveillance monitor, and document copier. (Tr. 27.) Therefore,

Brandenburg's claims for DIB and SSI were denied. (Tr. 28.)

### C. The ALJ's Credibility Determination Will Not Be Disturbed

Brandenburg's sole challenge to the Commissioner's final decision is that the ALJ improperly discounted the credibility of her testimony of severe and debilitating fatigue.[7] Brandenburg's challenge, however, is ultimately unpersuasive, and thus the ALJ's credibility determination will not be disturbed.

Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on symptoms such as pain or fatigue. 20 C.F.R. §§ 404.1529, 416.929; *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999); *Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998); SSR 96-7p. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment—that is, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529, 416.929; *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); SSR 96-7p. If the record does not allow the ALJ to make such a finding, then the inquiry ends, for a finding of disability cannot be made solely on the basis of the claimant's symptoms, even if they appear genuine. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the

---

[7] Notably, Brandenburg does not challenge the ALJ's discounting of the credibility of her symptom testimony in any other respect, including her complaints of "bone" pain, breathing difficulties, headaches, and stomach problems, which the ALJ determined lacked an underlying medically determinable impairment that could reasonably be expected to produce such symptoms. (*See* Tr. 23.)

extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see* 20 C.F.R. §§ 404.1529(c), 416.929; *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Williams*, 915 F. Supp. at 964. "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p. In making this finding, the ALJ must consider various factors in addition to the objective medical evidence, including the claimant's daily living activities; the location, duration, frequency, and intensity of her pain; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness, and side effects of any pain medication; treatment, other than medication, that the claimant receives for pain; any other measures that she uses to relieve pain; and any other factors concerning the claimant's functional limitations and restrictions due to pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, the ALJ first concluded that Brandenburg did not have an underlying medically

determinable physical impairment that could reasonably be expected to produce her alleged "extreme fatigue." (Tr. 22.) Of course, that could have ended the ALJ's inquiry, as a finding of disability cannot be based solely on a claimant's subjective symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. The ALJ, however, went on to acknowledge that Brandenburg's treatment for breast cancer in 2008 and 2009, more than five years *after* her alleged disability onset date of February 1, 2003, undoubtedly could cause fatigue. (Tr. 22.) Therefore, the ALJ did not end her inquiry after step one, but proceeded to step two of the credibility determination process to evaluate the functionally limiting effects of Brandenburg's fatigue to determine the extent to which it would affect her ability to do basic work activities.[8] SSR 96-7p; *see also* 20 C.F.R. §§ 404.1529(c), 416.929; *Herron*, 19 F.3d at 334.

At step two, the ALJ considered various factors prescribed by 20 C.F.R. §§ 404.1529(c) and 416.929(c) to assess the credibility of Brandenburg's complaints of debilitating fatigue, ultimately concluding that they were "extreme and continuing longer than is reasonable and supported by the record." (Tr. 22.) Accordingly, the ALJ discounted Brandenburg's subjective complaints to the extent they were inconsistent with the assigned RFC. (Tr. 26.)

In assessing Brandenburg's complaints, the ALJ first considered that although her testimony at the hearing portrayed a disabling level of fatigue (for example, that she spends most of her day sleeping and that she could only dress one-half of her body before needing to rest), the evidence of record indicates that she made only generalized complaints of fatigue to her medical professionals. (Tr. 22.) The ALJ's observation is an accurate characterization of the record.

---

[8] Since the ALJ proceeded to step two of the credibility analysis, Brandenburg's argument (and submission of a research study in support thereof) that breast cancer is a medically determinable impairment that can cause extreme fatigue is not pivotal.

Although Brandenburg complained of fatigue from time to time to her medical professionals, her complaints did not depict a disabling fatigue of the type testified to at the hearing. (*See, e.g.*, Tr. 281-82 (reflecting a complaint of "fatigue" in May and June 2007), 529-30 (stating in April 2009 that although Brandenburg had "some continued generalized fatigue," "[s]ubjectively [she] is doing well"), 579-80 (noting complaint of "some generalized fatigue" in September 2009, but concluding that she was "essentially asymptomatic", "displays no evidence of disease," and "continues to do very well"), 640 (reflecting a complaint of "fatigue" in November 2009).)

In fact, there is no indication that Brandenburg even mentioned her fatigue to Dr. Berry, the evaluating psychologist, or that Dr. Berry noted such fatigue. Rather, Brandenburg represented that she was "generally functioning pretty well" at the time, and Dr. Berry assigned her a GAF score of 70, reflective of only mild symptoms from her depression. (Tr. 400.) Similarly, although the results of her MMPI later suggested that she "probably feels exhausted, very irritable and angry," there was no mention of fatigue, much less debilitating fatigue, in her initial mental status examination performed at Family Service Society. (Tr. 582-83.)

Therefore, the ALJ accurately observed that Brandenburg's testimony at the hearing about her disabling fatigue was not particularly consistent with her complaints of general fatigue to some of her medical providers. *See* SSR 96-7p ("The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record."); *see, e.g.*, *Crawford v. Astrue*, 633 F. Supp. 2d 618, 634 (N.D. Ill. 2009) (discounting the claimant's credibility due to an inconsistency between statements he made at the hearing about his symptoms and statements he made to his physicians). Of course, as the Seventh Circuit Court of

13

Appeals has acknowledged, "[a]pplicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

The ALJ further considered that the laboratory tests run in 2007 for Brandenburg's complaints of fatigue yielded normal results. (Tr. 22, 281-82.) The ALJ also noted that Brandenburg had completed her radiation treatments for her cancer in March 2009, and that her radiation oncologist, Dr. Francis, reflected in subsequent months that although she had some generalized fatigue, she was "essentially asymptomatic" and overall was "doing well"; in fact, he instructed her to come back only as needed. (Tr. 530, 579-80.) Of course, an ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); *Crawford*, 633 F. Supp. 2d at 633 ("[A]n ALJ may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence."); SSR 96-7p.

In addition, the ALJ observed that Brandenburg's medical providers did not prescribe any specific treatment for Brandenburg's complaints of fatigue. (Tr. 22.) Brandenburg challenges the ALJ's observation, asserting that since she was prescribed antidepressants for her depression, a condition which can cause fatigue, she did indeed receive treatment for fatigue.

14

Brandenburg's attempt to nitpick the ALJ's decision, however, is unconvincing. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that when reviewing the ALJ's decision, the court will "give the opinion a commonsensical reading rather than nitpicking at it"). The ALJ correctly noted that Brandenburg did not receive any treatment *specifically* for her fatigue, although she was prescribed medications for several other conditions. The ALJ is certainly entitled to consider the types of treatment that a claimant has undergone when determining that claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding that claimant's subjective complaints of disabling pain were not entirely credible where the claimant's treatment was "routine and conservative"); *Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); SSR 96-7p.

Moreover, although the ALJ did not credit Brandenburg's assertions of severe and debilitating fatigue, she did recognize that the record indicated that Brandenburg experienced some level of fatigue from her breast cancer treatments. (Tr. 22.) Accordingly, while the state agency physicians opined that Brandenburg could perform light work, the ALJ ultimately afforded her even greater restrictions—that is, the ALJ limited her to sedentary work that did not require her to work at a fast pace, meet quotas, or maintain attention for extended periods. Thus, the ALJ did indeed credit Brandenburg's subjective symptom testimony of fatigue to some extent, acknowledging that she was likely de-conditioned after undergoing breast cancer

treatments. *See, e.g.*, *Polchow v. Astrue*, No. 10 cv 6525, 2011 WL 1900065, at *18 (N.D. Ill. May 19, 2011) (finding claimant's allegations of disabling fatigue only partially credible and limiting her to sedentary work); *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately considered the credibility of Brandenburg's complaints of fatigue in accordance with the factors identified in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and determined that the evidence did not support the alleged severity of her impairments.  In doing so, the ALJ adequately built an accurate and logical bridge between the evidence and her conclusion that Brandenburg's testimony of debilitating fatigue was not entirely credible, and her determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435.  Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Brandenburg.

SO ORDERED.

Enter for this 1st day of September, 2011.

S/Roger B. Cosbey　　　　　　
Roger B. Cosbey,
United States Magistrate Judge
